# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# COLUMBIA DIVISION

**RYAN SURRATT,**

    **Plaintiff,**

**v.**                                                                                        **No: _____**
                                                                                                 **JURY DEMANDED**

**STATE FARM FIRE AND CASUALTY COMPANY,**

    **Defendant.**

## COMPLAINT

COMES NOW the Plaintiff, Ryan Surratt, by and through counsel, and submits the following for his Complaint against State Farm Fire and Casualty Company:

## PARTIES AND JURISDICTION

1. Ryan Surratt ("Surratt" or "Plaintiff") is a resident of Mt. Pleasant, Maury County, Tennessee. At all times relevant hereto, Surratt was the owner and occupant of the dwelling located at 600 N. Main Street, Mt. Pleasant, Tennessee 38474 (the "Insured Premises").

2. Defendant, State Farm Fire and Casualty Company (hereafter "State Farm"), is organized under the laws of the State of Illinois. State Farm is authorized to sell property insurance policies in the State of Tennessee and is engaged in the insurance business in the State of Tennessee.

3. Jurisdiction and venue are appropriate in this Court.

4. This Complaint originates as the result of a storm loss that damaged Surratt's dwelling located on the Insured Premises, and State Farm's unlawful actions as follows: (a) State

Farm's failure and refusal to promptly and fully pay Surratt's insurance claim; (b) State Farm's refusal to honor the Appraisal Award after State Farm agreed to the appraisal process, as outlined in the subject insurance policy issued by State Farm; and (c) State Farm's wrongful denial of Surratt's full claim for insurance proceeds.

**FACTS**

5. At all times relevant hereto, Surratt was insured pursuant to an insurance contract whereby State Farm agreed to insure the dwelling, other structures, and personal property located at the Insured Premises against property damage, bearing Policy No. 42-CX-S959-3 (the "Policy").

6. A certified copy of the Policy has not yet provided by Defendant as of the date of the filing of this Complaint. The record will be supplemented once a certified copy of the policy is received.

7. At all times relevant hereto, the Insured Premises consisted of a residential dwelling and surrounding area in which Surratt resided.

8. The Policy provided insurance coverage for direct physical loss to the dwelling and other structures located on the Insured Premises and such other insurance coverage as specifically set forth in the Policy.

9. Pursuant to the Policy, Surratt paid an annual premium to Defendant in exchange for insurance coverage. Surratt paid the required premiums at all times relevant to this Complaint.

10. On November 4, 2019, a severe storm event involving strong winds damaged the dwelling located on the Insured Premises, as well as the personal property located therein (the "Loss").

11. The Policy was in effect at the time of the Loss.

12. Surratt promptly reported the Loss to Defendant, which assigned a claim number – No. 42-03B5-54R.

13. Surratt fulfilled all of the duties after the Loss that were imposed upon him by the Policy to the satisfaction of Defendant.

14. As it relates to the Loss, there is no applicable exclusion. The Loss is a compensable claim under the Policy.

15. The Loss caused widespread damage to the roof shingles on the property which resulted in subsequent interior water damage to numerous rooms inside the dwelling.

16. Surratt submitted a Proof of Loss to State Farm, which State Farm rejected on May 8, 2020. Surratt's cause of action against State Farm arose not before on year prior to the filing of this Complaint.

17. State Farm admitted and represented to Surratt that the Loss was a compensable claim and made certain partial payments on the claim, but these payment represents only a fraction of the amount owed to Surratt.

18. A dispute arose between Surratt and Defendant as to the amount of the Loss. Recognizing that State Farm's payment was grossly insufficient to repair the damage to the Insured Premises, the appraisal provision of the insurance Policy was invoked.

19. Based upon a letter from State Farm, the Policy's appraisal clause provides as follows:

> **Appraisal**
>
> If you and we fail to agree on the amount of the loss, either one can demand that the amount of the loss be set by appraisal. If either makes a written demand for appraisal, each shall select a competent, disinterested appraiser. Each shall notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers shall then select a competent, impartial umpire. If the two appraisers are unable to agree upon

3

> an umpire within 15 days, you or we can ask a judge of a court of record in the state where the **residence premises** is located to select an umpire. The appraisers shall then set the amount of the loss. If the appraisers fail to agree within a reasonable time, they shall submit their differences to the umpire. Written agreement signed by any two of these three shall set the amount of the loss. Each appraiser shall be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire shall be paid equally by you and us.

20. Surratt selected Toby Johnson of Omega Insurance Appraisals as his appraiser. State Farm did not object to the selected appraiser.

21. By letter dated June 15, 2020, State Farm agreed to appraisal, selecting Todd James as its appraiser. The two appraisers appointed Zachary Davidson as the appraisal umpire.

22. During the appraisal, State Farm's designated appraiser acted unprofessionally toward Plaintiff's appraiser. For example, State Farm's appraiser, Mr. James made the following comments to Plaintiff's appraiser:

- "Regarding the hardwood floors, I have never heard of such a stupid ass answer in my life! So what your [sic] saying is as of right now your [sic] not going to include them in your position but maybe in a couple of weeks or months you may wake up one day with a wild hair up your ass and decide you all of sudden want to include them."

- "I could care less about your concerns and don't answer to you."

- "[Y]ou are nothing more than a well educated and well spoken crook."

- Referring to the opposing appraiser as "a baby needing a pacifier."

23. Mr. James' behavior is not unique to this case, but rather is representative of a pattern and practice in his work serving as an appraiser for State Farm. For example, in another appraisal in which Mr. James served as State Farm's appraiser, he called the insured's appraiser a "crook," and when the insured's appraiser in that case asked Mr. James to expedite his appraisal after unnecessary delay, Mr. James responded "feel free to attempt to have me removed."

4

24. In yet another appraisal, Mr. James engaged in similar name-calling behavior with yet another appraiser and the appraisal umpire, calling them both "crooks" when an award was rendered inconsistent with State Farm's initial evaluation of the loss.

25. State Farm routinely utilizes Mr. James to serve as its appraiser on disputed claims.

26. Mr. James is neither competent nor disinterested and should be disqualified to serve as State Farm's appraiser on this claim.

27. State Farm's appraiser and Surratt's appraiser were unable to agree on the amount of the Loss and submitted their differences to their mutually selected umpire, in accordance with the Policy.

28. On March 23, 2021, the umpire, Zachary Davidson, and Surratt's appraiser, Toby Johnson, determined the replacement cost value of the Loss to be $148,403.10 and the actual cash value to be $120,830.32. The umpire and Surratt's appraiser signed the Appraisal Award, as required by the Policy.

29. State Farm's appraiser refused to sign the Appraisal Award.

30. In accordance with the Policy, "[i]f the appraisers fail to agree within a reasonable time, they shall submit their differences to the umpire. Written agreement signed by any two of these three shall set the amount of the loss."

31. A copy of the Appraisal Award is attached hereto as **Exhibit A.**

32. After the Appraisal Award, Surratt requested that State Farm make payment pursuant to the Appraisal Award as required by the Policy.

33. However, by letter from its counsel dated April 15, 2021, State Farm refused to pay the Appraisal Award. The letter further set out State Farm's position that it had paid the claim in full, inaccurately contending that the appraisal panel improperly made causation determinations.

34. The Appraisal Award, because it is not defective and there are not coverage issues remaining, is binding on State Farm.

35. Surratt's claim involves no coverage issues, but rather, simply requires a determination of the amount of the Loss. The only disputed issue is the amount owed by State Farm to Surratt as a result of the Loss. There is no reasonable coverage dispute, and this claim was appropriate for the appraisal process as set forth in the Policy.

36. State Farm's refusal to honor the Appraisal Award, and its refusal to pay Surratt the amounts owed to him for the Loss is without justification.

37. State Farm's refusal to pay the money and benefits due and owing Surratt under the Policy and its wrongful refusal to honor the Appraisal Award caused Surratt to initiate this lawsuit to recover insurance proceeds and/or other Policy benefits to which he is entitled.

38. State Farm's alleged reasons for denying Surratt's full claim are fabricated, wrongful, and done with the intent to injure and harm Surratt.

39. State Farm's failure and refusal to pay Surratt the amounts owed to him for the Loss is without justification and is intentional, fraudulent, malicious, and/or reckless.

## CAUSES OF ACTION

### Count 1 – Breach of Contract

40. The allegations contained in the paragraphs above in this Complaint are incorporated herein by reference as if set forth verbatim.

41. The Policy issued by State Farm is a binding contract and is supported by valid consideration.

42. State Farm is in total material breach of the Policy, and State Farm is liable to Surratt in the maximum amount allowed by the Policy for the Loss. Specifically, State Farm's

breach of contract includes the following, without limitation: (a) State Farm's failure and refusal to pay the amounts owed to Surratt for the Loss under the Dwelling coverage afforded by the Policy; and (b) State Farm's failure and refusal to pay such other amounts to Surratt as may be required by the Policy.

43. State Farm also breached its contract with Surratt by refusing to pay the Appraisal Award, a process that was properly invoked by Surratt to resolve the parties' dispute concerning the amount of the Loss, and to which both appraisers agreed as to the amount of the Loss.

44. State Farm also breached its contact with Surratt by refusing to honor the Appraisal Award and make payment pursuant to its terms.

45. As a result of State Farm's breach of contract, Surratt has sustained substantial compensable losses for the amounts claimed under the Policy.

46. State Farm is liable to Surratt for his losses.

47. State Farm's breach of contract is intentional, fraudulent, malicious, and/or reckless, therefore justifying an award of punitive damages. *See, e.g., Riad v. Erie Ins. Exchange*, 436 S.W.3d 256, 276 (Tenn. Ct. App. Oct. 31, 2013). Specifically, Defendant intentionally, fraudulently, maliciously, and/or recklessly: (1) failed to effectuate a prompt and fair settlement of Surratt's claim when liability was reasonably clear; (2) refused and failed to conduct a reasonable, prompt, and fair investigation concerning the issues surrounding Surratt's claim for insurance proceeds; (3) unjustly refused and/or failed to pay Surratt's claim for its own financial preservation with no reasonable or justifiable basis; (4) refused full payment on Surratt's claim for no valid reason whatsoever; (5) failed to treat Surratt's interests with equal regard to its own; (6) promised prompt action and claim-handling but then failed to provide full payment; (7) failed and refused to pay for obvious damage caused by the Loss; (8) offered Surratt substantially less than

the amounts due to Surratt under the Policy; (9) concealed important and material facts from Surratt in an effort to minimize the amount Defendant would have to pay on the claim; (10) misrepresented relevant facts and policy provisions to Surratt; (11) failed to adopt and implement reasonable standards for the prompt investigation and settlement of claims; (12) forced Surratt to pursue alternate remedies, i.e., appraisal, to recover the amounts owed pursuant to the Policy instead of properly scoping, estimating, and paying for covered losses; (13) forced Surratt to file suit to enforce its rights under the Policy; (14) hired an unprofessional appraiser who resorted to name-calling and unnecessary delays, all in an effort to thwart the appraisal process; (15) intentionally and wrongfully refused to honor the Appraisal Award, which was agreed to by two of the three-person appraisal panel; (16) engaged in conduct designed to decrease and minimize the amount to be paid to Surratt; and (17) engaged in such other acts towards Surratt that are contrary to the duties owed to Surratt as established by the customs and practices in the industry, the law, and the Policy. State Farm knew, or reasonably should have known, that Surratt was justifiably relying on the money and benefits due him under the terms of the Policy. Nevertheless, acting with conscious disregard for Surratt's rights and with the intention of causing or willfully disregarding the probability of causing unjust and cruel hardship on Surratt, Defendant consciously ignored Surratt's valid claim and withheld monies and benefits rightfully due Surratt.

48. Surratt seeks, and is entitled to, punitive damages.

WHEREFORE, as a result of the foregoing, Surratt would respectfully request that this Honorable Court award a judgment to Surratt as follows:

    A.    That the Court adjudicate and declare the parties' rights and obligations under the Policy;

B. For compensatory and punitive damages to Surratt against Defendant in an amount to be determined by a jury;

C. For specific performance of the Appraisal Award;

D. For an Order disqualifying Todd James from serving as State Farm's appraiser;

E. For all costs incurred by Surratt as a result of this action;

F. For pre- and post-judgment interest; and

G. For such other further and general relief as this Court deems just and equitable.

## JURY DEMAND

Surratt demands a jury of his peers.

Respectfully submitted,

McWHERTER SCOTT BOBBITT PLC


s/J. Brandon McWherter
J. BRANDON McWHERTER #21600
brandon@msb.law
JONATHAN L. BOBBITT #23515
jonathan@msb.law
EMILY S. ALCORN #033281
emily@msb.law
341 Cool Springs Blvd, #230
Franklin, Tennessee 37067
Telephone: (615) 354-1144

*Attorneys for Plaintiff*